```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

THIAGO REAES,                       :
                                    :
     Plaintiff,                     :
                                    :
v.                                  :    CASE NO. 3:13cv1508(DFM)
                                    :
CITY OF BRIDGEPORT,                 :
                                    :
     Defendant.                     :
```

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Thiago Reaes, brings this action against the City of Bridgeport (the "City") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1).  Plaintiff alleges that the City discriminated against him on the basis of his Brazilian national origin when it refused to hire him as a firefighter.  Currently pending is the City's motion for summary judgment. (Doc. #38.)  For the reasons set forth below, the motion is GRANTED.[1]

I.   Factual Background

The following facts, drawn from the parties' Local Rule 56(a) statements, are undisputed.

---

[1] This is not a recommended ruling; the parties consented to the jurisdiction of a magistrate judge. (Doc. #33.)  See 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

On June 20, 2011, the City announced an examination for the position of entry level firefighter. (City's Local Rule 56(a)(1) Statement of Facts ("City's SOF"), Doc. #38-1, ¶ 2; Plaintiff's Local Rule 56(a)(2) Statement ("Pl.'s SOF") ¶ 2.) Applicants were required to pass a written and oral examination; submit to a physical examination and drug screening; undergo a background investigation; take a pre-employment psychological evaluation; and be recommended for hire by licensed psychologist Dr. Mark J. Kirschner, whom the City retained to conduct the evaluation. (City's SOF ¶¶ 2, 4; Pl.'s SOF ¶¶ 2, 4.) The psychological evaluation consisted of: the California Personality Inventory ("CPI") test; the Personality Assessment Inventory ("PAI") test; the psychological history report ("PsyQ");[2] a writing sample; and a clinical interview. (City's SOF ¶ 6; Pl.'s SOF ¶ 6.)

On August 16, 2012, plaintiff completed the psychological examination[3] and met with Dr. Kirschner for his clinical

---

[2] The CPI is used widely in public safety selection as a measure of emotional suitability and effective interpersonal functioning. (City's SOF ¶ 10; Pl.'s SOF ¶ 10.) The PAI is a measure of emotional stability and abnormal personality functioning. (Id.) The PsyQ is a self-reporting questionnaire that provides life history information pertinent to the evaluations of candidates for public safety positions. (Id.)

[3] Dr. Kirschner delegated the administration of the testing instruments to administrative employee Michelle Falango. He could not attest to her level of education. (City's SOF ¶ 9;

2

interview.  (City's SOF ¶ 15; Pl.'s SOF ¶ 15.)  During clinical interviews of job candidates, including plaintiff, Dr. Kirschner discussed topics such as education, employment, military and law enforcement experience, driving history, adult relationships, financial history, legal history, substance abuse, developmental history, parental responsibilities, and psychological treatment and evaluation history.[4]  (City's SOF ¶ 12; Pl.'s SOF ¶ 12.)  Dr. Kirschner wrote a report of his findings based on plaintiff's interview and test results.  (City's SOF ¶ 22; Pl.'s SOF ¶ 22.)  Dr. Kirschner opined that plaintiff's responses on the CPI were made in a manner to portray himself in an overly favorable light--a tactic Dr. Kirschner describes as "faking good." (City's SOF ¶ 22(a); Pl.'s SOF ¶ 22.)  As for the PAI, Dr. Kirschner concluded that plaintiff's approach was defensive, suggesting an unwillingness to admit to many normal human faults.  (City's SOF ¶ 22(b); Pl.'s SOF ¶ 22.)  He described

---

Pl.'s SOF ¶ 9.)  Dr. Kirschner did not meet plaintiff until after he completed the tests.  (Pl.'s SOF ¶ 21.)

[4]During plaintiff's clinical interview, Dr. Kirschner learned, for example, that plaintiff grew up in Brazil and speaks Portuguese and English.  (City's SOF ¶ 14; Pl.'s SOF ¶ 14.)  Plaintiff moved to the United States on a partial college soccer scholarship when he was 21 years old.  (Id.)  He earned 30 college credits before quitting because of financial difficulty.  (Id.)  Plaintiff has worked as a climate specialist at the University of Connecticut; as a bartender; and as a fitness instructor.  (Id.)  At the time of the interview, he worked as a part-time tennis instructor.  (Id.)

plaintiff's test-taking approach as careless, which made him question plaintiff's integrity and the overall validity of his test results. (City's SOF ¶ 22(c); Pl.'s SOF ¶ 22.) Dr. Kirschner did not recommend plaintiff for hire. (City's SOF ¶ 23; Pl.'s SOF ¶ 23.)

Dr. Kirschner sent his report and recommendation to the City's personnel director, David Dunn. (City's SOF ¶ 23; Pl.'s SOF ¶ 23.) On August 24, 2012, Mr. Dunn sent plaintiff a letter explaining that he had been disqualified from the hiring process based on the results of his psychological evaluation. (City's SOF ¶ 25; Pl.'s SOF ¶ 25.) Plaintiff appealed that decision to the Bridgeport Civil Service Commission (the "Commission"). (City's SOF ¶ 26; Pl.'s SOF ¶ 26.)

In support of his appeal, plaintiff submitted a two-page report from Dr. Misty Ginicola, an associate professor of developmental psychology at Southern Connecticut State University. (City's SOF ¶ 28; Pl.'s SOF ¶ 28.) Dr. Ginicola opined that administering a personality test on "someone who is a cultural minority or who speaks English as a second language is very problematic, in terms of validity (accuracy of the measure) and reliability (consistency of testing)." (City's SOF ¶ 30; Pl.'s SOF ¶ 30; Def. Ex. N, Doc. #38-3, p. 26.) She explained that "[p]ersonality testing relies on the use of

4

cultural norms and norming groups to establish acceptable answers." (Id.)  She also noted that "language is always important when it comes to assessment, in order to understand and answer each item appropriately." (Id.)  Dr. Ginicola asserted that "[i]f English is not the test taker's first language, ethical guidelines require that the test be administered in their native language to assure validity." (Id.)  Dr. Ginicola also opined on the use of the CPI and the PAI in general.  (City's SOF ¶ 31; Pl.'s SOF ¶ 31; Def. Ex. N, Doc. #38-3, pp. 26-27.)  She asserted that the CPI has "low validity," and even more so for test takers from "culturally different backgrounds." (Id.)  As to the PAI, she opined that administrators should use "extreme caution" when giving this test to non-native English speakers. (Id.)  Dr. Ginicola expressed that in her professional opinion, the CPI and PAI "should either be given in [plaintiff's] native language or alternative assessments should be given." (Id.)

After a hearing, the Commission denied plaintiff's appeal. (City's SOF ¶¶ 35, 36; Pl.'s SOF ¶¶ 35, 36.)  This action followed.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is a fact that influences the case's outcome under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A "genuine" dispute is one that a reasonable jury could resolve in favor of the non-movant. Id. The moving party bears the initial burden of establishing that there are no genuine disputes as to any material fact. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Once such a showing is made, the non-movant must show that there is a genuine issue for trial. Id. The court may rely on admissible evidence only, Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010), and must view the evidence in the record in the light most favorable to the non-movant, drawing all reasonable inferences in that party's favor. Weinstock, 224 F.3d at 41.

> A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient . . . . Summary judgment cannot be defeated by the presentation . . . of but a scintilla of evidence supporting [a] claim . . . .

Rafael v. State of Conn. Dep't of Children & Families, No. 3:14-CV-1746 (VLB), 2017 WL 27393, at *3 (D. Conn. Jan. 3, 2017) (citations and internal quotation marks omitted).

6

III. Discussion

Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[5]

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." Ricci v. DeStefano, 557 U.S. 557, 577 (2009). Plaintiff does not indicate whether his claim is based on disparate impact or disparate treatment. Under either theory, he fails to make a prima facie case.

A. Disparate Impact

Title VII prohibits "practices that are fair in form, but discriminatory in operation." Griggs v. Duke Power Co., 401

---

[5] CFEPA claims "proceed under the same analysis as federal Title VII claims." Traverso v. State Dep't of Educ., No. HHDCV095033170S, 2016 WL 5003985, at *3 (Conn. Super. Ct. Aug. 11, 2016); see also Cutler v. Stop & Shop Supermarket Co., 513 F. App'x 81, 82 (2d Cir. 2013).

7

U.S. 424, 431 (1971). "[A] plaintiff need not show that an employer[6] intended to discriminate to state a claim under Title VII. Rather, [a] prima facie violation of [Title VII] may be established by statistical evidence showing that an employment practice has the effect of denying the members of one race equal access to employment opportunities." Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 382 (2d Cir. 2006) (internal quotation marks omitted).

"Disparate impact claims follow a three-part analysis involving shifting evidentiary burdens." Id. Plaintiff bears the initial burden of establishing a prima facie case.

> To do so, the plaintiff must first identify the employment practice allegedly responsible for the disparities . . . . The plaintiff must then produce statistical evidence showing that the challenged practice causes a disparate impact on the basis of race, color, religion, sex, or national origin . . . . Once the plaintiff has established a prima facie case of disparate impact discrimination, the defendant has two

---

[6]Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce . . ., and any agent of such person." 42 U.S.C. § 2000e(b). Plaintiff asserts that the City is liable for the alleged discriminatory conduct of Dr. Kirschner because he acted as an agent of the City. The City does not contest liability on these grounds. "The term 'agent' is not defined by Title VII, but has been interpreted by courts as an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." Grey v. Norwalk, 304 F. Supp. 2d 314, 326 (D. Conn. 2014); see also Pathan v. Conn., 19 F. Supp. 3d 400, 416 (D. Conn. 2014) ("The language of Title VII makes clear that Congress intended for agents of employers to be held to the same standards as employers.").

8

>avenues of rebuttal.  First, the defendant may directly attack plaintiff's statistical proof by pointing out deficiencies in data or fallacies in the analysis . . . .  Second, the defendant may rebut a plaintiff's prima facie showing by demonstrat[ing] that the challenged practice is job related for the position in question and consistent with business necessity . . . .  Finally, if the defendant meets the burden of showing that the challenged practice is job related, the plaintiff can only prevail by showing that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship.

Id.

Here, plaintiff appears to espouse a disparate impact theory when he contends that the testing instruments used in the psychological evaluation are "culturally biased."  (Pl. Br., Doc. #47, p. 18.)  Specifically, he alleges that

>[c]andidates, such as the plaintiff, who have a different cultural background from the dominant American culture are at a disadvantage relative to their peers in the psychological evaluation component of the defendant's selection process because Dr. Kirschner refused to take into consideration that they were likely to have different background knowledge and experience, or possess different sets of cultural values and beliefs, and therefore respond to questions differently.

(Pl. Br., Doc. #47, pp. 32-33.)

Plaintiff offers only Dr. Ginicola's report in support. This is insufficient to meet plaintiff's burden of proof--he has not produced any "statistical evidence showing that the challenged practice causes a disparate impact on the basis of . . . national origin."  Gulino, 460 F.3d at 382; see also Briscoe

9

v. City of New Haven, 967 F. Supp. 2d 563, 586 (D. Conn. 2013), quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988) ("'[P]laintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'").  For these reasons, to the extent plaintiff attempts to make a disparate impact claim, he fails to establish a prima facie case.

   B. Disparate Treatment

Plaintiff also engages in an argument that suggests a disparate treatment theory.  This too fails.

In disparate treatment cases, "the plaintiff is required to prove that the defendant had a discriminatory intent or motive." Watson, 487 U.S. at 986; see also United States v. City of N.Y., 713 F. Supp. 2d 300, 316 (S.D.N.Y. 2010) ("Unlike disparate impact claims, disparate treatment claims require proof of an employer's discriminatory motive . . . .").

Title VII disparate treatment claims are evaluated under the three-step, burden-shifting analysis described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  The plaintiff first must establish a prima facie case by showing that he is a member of a protected class; he was qualified for the position for which he applied; he suffered an adverse

10

employment action; and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  Id. at 802.  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell, 411 U.S. at 804).  If the employer does so, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was a pretext for discrimination.  Burdine at 253.  The ultimate burden of persuasion "remains at all times with the plaintiff." Id.

### 1. Prima Facie Case

The evidence necessary to satisfy the plaintiff's initial burden is de minimis.  Zimmermann v. Assoc. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).  Here, the City concedes that plaintiff is a member of a protected class, was qualified for the position for which he applied, and suffered an adverse employment action.  Thus, the only remaining question is whether plaintiff has demonstrated circumstances giving rise to an inference of discrimination.  A plaintiff can support this burden by

11

> (a) demonstrating that similarly situated employees of a different race or national origin were treated more favorably, (b) showing that there were remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, or (c) proving that there were other circumstances giving rise to an inference of discrimination on the basis of plaintiff's . . . national origin . . . .

Nguyen v. Dep't of Corr. & Cmty. Servs., 169 F. Supp. 3d 375, 389 (S.D.N.Y. 2016) (citation and internal quotation marks omitted). Here, plaintiff must offer evidence that gives rise to an inference that Dr. Kirschner administered the psychological examination differently to plaintiff because of his national origin. Plaintiff fails in that regard.

### a. Comparators

"A plaintiff may raise an inference of discriminatory intent by showing that the employer . . . treated [him] less favorably than a similarly situated employee outside [his] protected group—i.e., a 'comparator.'". Joye v. PSCH, Inc., No. 14CV3809 (DLC), 2016 WL 6952252, at *6 (S.D.N.Y. Nov. 28, 2016); see also Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) ("[A] showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case."). A plaintiff relying on comparator evidence "must show

12

[he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

Here, plaintiff has not named a comparator, let alone shown that the City "treated him less favorably than a similarly situated employee outside of his protected group." Graham, 230 F.3d at 39; see, e.g., Russell v. Hughes, No. 3:07-CV-1527 (WWE), 2009 WL 1212754, at *3 (D. Conn. Apr. 30, 2009) (granting summary judgment where plaintiff "failed to produce any evidence regarding . . . comparators, including their names, their supervisors, their positions or their actions that may be analogous to plaintiff's.").

                              b. Discriminatory Remarks by Decisionmakers

Another way a plaintiff can show disparate treatment is through evidence of remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus. "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). As is so often the case, there is no smoking gun here.

### c. Other Circumstances

Lastly, a plaintiff can make a prima facie case of disparate treatment "by showing other circumstances giving rise to an inference of discrimination." Farias v. Instructional Svs., Inc., 259 F.3d 91, 98 (2d Cir. 2001).

Plaintiff argues that "Dr. Kirschner, in conducting the psychological examination, failed to adhere to the ethics and procedures of his profession . . . and ignored the impact that the plaintiff's ethnicity, where English was not his dominant language, [might have] on the results of the psychological evaluation." (Pl. Br., Doc. #47, pp. 17-18.) Plaintiff focuses on what he describes as Dr. Kirschner's "pronounced deviation" from the American Psychological Association Ethical Principles of Psychologists and Code of Conduct ("APA Ethical Principles"). He asserts that Dr. Kirschner deviated from the APA Ethical Principles in two ways: (1) by delegating the administration of the psychological examination to a receptionist who did not have proper education, training, or experience; and (2) by refusing to consider plaintiff's culture, ethnicity, and language difference when assessing plaintiff's test results.

Even if Dr. Kirschner deviated from the APA Ethical Principles, plaintiff has not shown how such deviation gives rise to an inference of discriminatory intent on the basis of

14

his national origin.[7]  At the prima facie stage, "[t]he only relevant inquiry is whether Plaintiff has come forward with enough evidence from which a rational fact finder could infer unlawful discriminatory animus on the part of [Defendants] . . . .  When a plaintiff fails to present evidence to establish any such causal link between [the adverse employment action] and his [protected class,] summary judgment is appropriate."  Johnson v. N.Y. City Dep't of Educ., 39 F. Supp. 3d 314, 322 (E.D.N.Y. 2014) (citation and internal quotation marks omitted); see, e.g., Whaley v. City Univ. of N.Y., 555 F. Supp. 2d 381, 402 (S.D.N.Y. 2008) (granting summary judgment on Title VII discrimination claim where "no evidence support[ed] any finding of discriminatory animus.").

Although the burden of establishing a prima facie case is slight, plaintiff has not put forth evidence that satisfies this standard.  He fails to provide concrete evidence of

---

[7]Plaintiff contends that Dr. Kirschner's alleged deviation from the APA Ethical Principles is "tantamount to an employer's failure to follow its established hiring procedures, and is evidence of discrimination."  (Pl. Br., Doc. #47, p. 22.)  This argument is misplaced here--it is more fitting at the pretext stage.  See Bagley v. J.P. Morgan Chase & Co., No. 10 CIV. 1592 PGG, 2012 WL 2866266, at *15 (S.D.N.Y. July 12, 2012) ("Although [v]iolation of an organization's internal procedures alone is insufficient to create an inference of discrimination [or retaliation] . . ., [f]ailure to follow internal procedures can . . . be evidence of pretext." (citations and internal quotation marks omitted).

15

circumstances giving rise to an inference of discrimination. See D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998) (holding that party opposing summary judgment "must offer some hard evidence showing that its version of the events is not wholly fanciful."). On this record, plaintiff's disparate treatment claim fails at the prima facie stage.

### 2. Employer's Non-Discriminatory Reason

Even if plaintiff had established a prima facie case of disparate treatment, the City has articulated a legitimate nondiscriminatory reason for refusing to hire him.

At the second stage of the McDonnell Douglas analysis, an employer's burden is to "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal quotation marks omitted). The employer's "burden of production is not a demanding one; it need only offer an explanation for the employment decision." Campbell v. Cty. of Onondaga, No. 504-CV-1007 (NAM)(GHL), 2009 WL 3163498, at *17 (N.D.N.Y. Sept. 29, 2009). Here, the City sets forth evidence to show that it did not hire plaintiff because of his

performance on the psychological evaluation.  The City has met its burden.

### 3. Pretext

Even if the court were to reach the last prong of the McDonnell Douglas analysis, summary judgment still would be appropriate because plaintiff is unable to carry his ultimate burden of proving that the City's proffered rationale is "mere pretext for actual discrimination."  Weinstock, 224 F.3d at 42.

To satisfy this burden, which is "higher than that . . . applied for analyzing the prima facie case," Geoghan v. Long Is. R.R., No. 06-CV-1435, 2009 WL 982451, at *21 (E.D.N.Y. Apr. 9, 2009), the "plaintiff must produce not simply 'some' evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  Weinstock at 42.  That evidence may be either direct or circumstantial, but must, "taken as a whole, support[] a sufficient rational inference of discrimination."  Id.  "[I]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination."  St. Mary's Honor Ctr., 509 U.S. at 519.

Here, to show pretext, plaintiff offers the same evidence and makes the same arguments as he did to support his prima facie case. Although plaintiff is entitled to rely "on the same evidence used to support [his] prima facie case," Kennebrew v. N.Y. City Hous. Auth., No. 01 CIV 1654 (JSR)(AJP), 2002 WL 265120, at *14 (S.D.N.Y. Feb. 26, 2002), that evidence does not show that the City's legitimate nondiscriminatory reason for refusing to hire plaintiff was pretext for discrimination. Plaintiff does little more than conclude that the evidence establishes pretext, which is insufficient to defeat summary judgment. See, e.g., Gengo v. City Univ. of N.Y., No. 07-CV-681 (KAM)(JMA), 2010 WL 6372012, at *14 (E.D.N.Y. Dec. 2, 2010) (holding that "plaintiff fails to demonstrate that the non-discriminatory reason proffered by defendant is pretextual . . . . Plaintiff merely states in a conclusory fashion that pretext is established by the evidence he compiled in support of his prima facie case.").

Unable to carry his burden of proof under either a disparate impact or disparate treatment theory, summary judgment is appropriate.

IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment (doc. #38) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  See 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED at Hartford, Connecticut this 10th day of February, 2017.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge